**Case No: 23-1861**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

---

MICHAEL LEIT,

        Plaintiff-Appellant,

    vs.

ASPIRUS MEDICAL GROUP, INC.
d/b/a ASPIRUS CLINICS, INC.,

        Defendant-Appellee.

---

Appeal from the United States District Court
for the Western District of Wisconsin
Case No: 3:22-cv-00079-slc
The Honorable Magistrate Judge Stephen L. Crocker

---

**REPLY BRIEF OF PLAINTIFF-APPELLANT, MICHAEL LEIT**

---

Aaron N. Halstead, State Bar No. 1001507
Email: ahalstead@hq-law.com
Aaron J. Bibb, State Bar No. 1104662
Email: abibb@hq-law.com
HAWKS QUINDEL, S.C.
409 East Main Street
Post Office Box 2155
Madison, Wisconsin 53701-2155
Telephone: 608/257-0040
Facsimile: 608/256-0236

Attorneys for Plaintiff-Appellant,
Michael Leit

# TABLE OF CONTENTS

TABLE OF CONTENTS………………………………………………………………ii

TABLE OF AUTHORITIES……………………………………………………………iv

INTRODUCTION…………………………………………………………………1

ARGUMENT………………………………………………………………………3

    I.     LEIT WAS ENTITLED TO AN AWARD OF PARTIAL
           SUMMARY JUDGMENT ON THE QUESTION
           OF ASPIRUS'S LIABILITY FOR BREACHING HIS
           EMPLOYMENT CONTRACT………………………………………3

           A. THE LTDI POLICY'S "PROCEDURES FOR BEING
               DETERMINED DISABLED" DID NOT AUTHORIZE
               ASPIRUS TO DETERMINE WHETHER LEIT WAS
               DISABLED………………………………………………3

           B. ASPIRUS'S NEWLY PROFFERED MEANING OF
               "THE PROCEDURES FOR BEING DETERMINED
               DISABLED" IS IMPLAUSIBLE……………………………8

           C. ASPIRUS IMPROPERLY INVITES THE COURT TO
               CONSIDER EXTRINSIC EVIDENCE REGARDING THE
               MEANING OF THE DISABILITY PROVISION………………10

           D. ASPIRUS WAIVED ITS ARGUMENT REGARDING
               LEIT'S DAMAGES BY FAILING TO RAISE IT IN THE
               DISTRICT COURT………………………………………11

           E. LEIT DID NOT WAIVE HIS RIGHT TO APPEAL THE
               DISTRICT COURT'S GRANT OF SUMMARY JUDGMENT
               ON HIS CLAIM FOR BREACH OF THE IMPLIED
               COVENANT OF GOOD FAITH AND FAIR DEALING…………11

II.   THE DISTRICT COURT VIOLATED SEVENTH CIRCUIT
      RULES BY FAILING TO ADEQUATELY CONSIDER LEIT'S
      ARGUMENTS AND BY FAILING TO PROVIDE ADEQUATE
      REASONS FOR ITS JUDGMENT……………………………..…………12

CONCLUSION………………………………………………………...…………………14

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. (32)(A)(7) and
CIRCUIT RULE 32(c)……………………………………………………………………15

CERTIFICATE OF SERVICE………………………………………..………………16

CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 25(a)…………..………..17

## TABLE OF AUTHORITIES

**Cases**

*Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 258 (7th Cir. 1998)........................8

*LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 943 (7th Cir. 2010)..10, 11

*Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 760 (7th Cir. 2022)..........................12

*Town Bank v. City Real Estate Dev., LLC*, 793 N.W.2d 476, 483 (Wis. 2010)......6, 10

## INTRODUCTION

Plaintiff-Appellant Michael Leit's ("Leit") three-year employment contract with Defendant-Appellee Aspirus Medical Group, Inc. d/b/a Aspirus Clinics, Inc. ("Aspirus") provided that Aspirus could terminate Leit only if one of a limited set of enumerated conditions were met. The only condition at issue on this appeal is contained in a provision allowing Aspirus to terminate Leit's employment upon his "death or the determination of being 'disabled.'" A017. That provision is further narrowed by this statement: "Disabled, and the procedures for being determined disabled, shall be defined in the disability insurance policy provided by Aspirus hereunder." *Id*. The parties agree that the disability insurance policy referred to in this provision is the long-term disability insurance (LTDI) policy issued to Aspirus by Lincoln National Life Insurance Company ("Lincoln").

Lincoln never determined that Leit was disabled under the procedures defined in the LTDI policy it issued. In fact, Lincoln denied his claim without ever evaluating whether he met the policy's definition of "disabled." Nevertheless, Aspirus terminated Leit under Section 6.1.3. of the employment agreement, contending that **Aspirus** was authorized to determine whether Leit was "disabled" under "the procedures for being determined disabled" contained in the Lincoln LTDI policy. A017. But those procedures clearly authorized only Lincoln to determine whether Leit was "disabled." Accordingly, Aspirus breached the employment contract when it terminated Leit, as Lincoln never determined him to be "disabled" under "the procedures for being

1

determined disabled" in the Lincoln LTDI policy. The district court therefore erred when it denied Leit's motion for partial summary judgment on Aspirus's liability for breaching the employment contract and when it granted Aspirus's motion for summary judgment.

In its response brief, Aspirus contends that it was entitled to summary judgment because Leit was unable to do his job at the time of his termination. But Aspirus misses the mark. Under the clear, unambiguous language of the employment contract's disability provision, the question is not merely whether Leit was "disabled" in the abstract. Nor is the question whether Leit was "disabled" in his own opinion, Aspirus's opinion, or his doctor's opinion. Indeed, the question is not even solely whether Leit was "disabled" under the definition of the term contained in the Lincoln LTDI policy. Rather, the precise question is whether Leit was "determin[ed] . . . 'disabled'" under "**the procedures for being determined disabled**" as "defined in the disability insurance policy provided by Aspirus hereunder." A017 (emphasis added).

As explained in Leit's initial brief and further below, the procedures in the Lincoln LTDI policy allow Lincoln, and only Lincoln, to determine whether Leit was disabled. Lincoln did not do so—indeed, not even Aspirus argues that it did—and Aspirus therefore breached the employment contract when it terminated Leit.

**ARGUMENT**

I.    **Leit was entitled to an award of partial summary judgment on the question of Aspirus's liability for breaching his employment contract**

   A.    **The LTDI policy's "procedures for being determined disabled" did not authorize Aspirus to determine whether Leit was disabled**

Throughout this litigation, Leit's position on Aspirus's liability for breaching the employment contract has been as simple and straightforward as the terms of the contract's disability provision. The "procedures for being determined disabled" defined in the Lincoln LTDI policy authorized Lincoln, and Lincoln alone, to determine whether Leit was "disabled" within the policy's definitions. As explained in Leit's initial brief before this Court, the Lincoln LTDI policy defines a procedure in which an applicant submits proof of claim, Lincoln reviews the applicant's proof, and Lincoln then either asks for more information, denies the claim, or approves it. Dkt. 7, at 13; *see also* A021. Leit applied for benefits under the Lincoln LTDI policy, but Lincoln denied his claim because he had not worked for Aspirus long enough to qualify for benefits. So Lincoln never evaluated his proof of claim and never determined whether he was "disabled" within the meaning of the policy's definition of the term—that is to say, Lincoln never determined Leit to be "disabled" within "the procedures for being determined disabled" contained in the Lincoln LTDI policy.

Aspirus contends that the disability provision authorized Aspirus to evaluate Leit and determine whether he was disabled, thereby triggering its right to terminate him under the disability provision. But Aspirus ignores the fact that the disability provision expressly incorporates "the procedures for being determined disabled"

3

contained within the Lincoln LTDI policy, which expressly states that it is solely Lincoln's responsibility to administer those procedures. The LTDI policy expressly reserves to Lincoln alone the authority to "interpret its provisions, administer claims and resolve questions arising under it." A022. In other words, the LTDI policy expressly states that only Lincoln may interpret the policy provisions (which would necessarily include definitions contained in the policy, including the definition of "disabled") and resolve questions arising under the policy (which would necessarily include evaluating the applicant's proof of claim to determine whether he meets the definition of "disabled"). This language clearly forecloses Aspirus's argument that it was entitled to determine whether Leit was disabled under the policy's "procedures for being determined disabled."

Aspirus stresses the fact that **Leit** believed that he was disabled under the Lincoln policy's definition, as he represented both to Aspirus and to Lincoln that he was unable to work and eligible for benefits. It is immaterial, Aspirus contends, that Lincoln never determined whether Leit was "disabled" under the LTDI policy's procedures. But as noted in Leit's opening brief, this would render the phrase "the procedures for being determined disabled" mere surplusage. If Aspirus's position were correct, then Aspirus could have terminated Leit as soon as he applied for benefits under the Lincoln policy, because at that point Leit and his doctor had represented that he was disabled. But if this were the case, why did Aspirus not draft the employment contract's disability provision to say so, such as by allowing Aspirus to terminate Leit "**upon his application for disability insurance benefits** under

the disability insurance policy provided by Aspirus hereunder" or "**if the employee represents that he is disabled**"? After all, Aspirus's position is that "the procedures for being determined disabled" in the Lincoln LTDI policy allow not only Lincoln, but also Aspirus, to evaluate Leit's proof of claim and determine whether he should be deemed "disabled" under the policy. Why bother to wait for Lincoln's determination at all if Aspirus was empowered to make the determination itself based solely on Leit's belief that he was disabled?

Aspirus's argument effectively begins at the end and works backward. Aspirus contends that regardless of the plain language of the disability provision, it would be an absurd result for the disability provision to require Aspirus to employ Leit despite his belief that he can no longer work. But why is this result absurd? The employment contract bound not only Aspirus, but also Leit, to a three-year employment relationship unless the parties terminated the contract under a limited set of allowed reasons. *See* A016–018. In other words, each side was making a durable, substantial, long-term commitment to the other. And Leit had left a thriving orthopedic practice in New York to travel to rural Wisconsin to work for Aspirus. *See* A002–003. It would be natural for someone in Leit's position, making such a substantial commitment to his employer, to expect to be financially taken care of by his employer one way or another if he were to suddenly find himself unable to work. In essence, the disability provision says to Leit: "If you become disabled and receive LTDI benefits (i.e., you are determined to be 'disabled' under 'the procedures for being determined disabled' in the Lincoln LTDI policy), we are free to terminate your employment. But if your

application for LTDI benefits is denied despite your inability to work, then we will not terminate your employment."

Aspirus denies that the disability provision could have such a purpose, asserting that the provision's purpose "is to avoid an employer/employee relationship when the employee cannot perform the very tasks that he or she was hired to complete." Dkt. 12, at 39. But Aspirus cites no evidence or authority to support this assertion, not even an affidavit from its own employees, and this assertion must therefore be disregarded. The record on appeal contains no evidence as to what Aspirus's purpose may have been in drafting the provision, and in any case, if consideration of such extrinsic evidence were necessary, that would present a question of fact for the jury, not a question of law for the district court. *Town Bank v. City Real Estate Dev., LLC*, 793 N.W. 2d 476, 483 (Wis. 2010).

In any event, Aspirus's interpretation of the disability provision—that it authorizes Aspirus to evaluate proof of claim and determine whether an employee is "disabled" within the meaning of the LTDI policy—would undoubtedly lead to absurd results. Aspirus does not contend that its managerial staff have any experience or expertise in evaluating medical evidence regarding an employee's ability to work, nor has it adduced any such evidence. Nor does the contract even state that an employee must disclose the nature of his potentially disabling medical condition to Aspirus to allow the company to evaluate his ability to work before deeming him "disabled," much less submit medical evidence to Aspirus of his ability to work.

6

To further illustrate the absurd results that would follow from Aspirus's position, consider a case in which an employee applies to Lincoln for LTDI benefits, after which Lincoln denies the claim based on its evaluation of the employee's medical evidence. According to Aspirus, the contract's disability provision would allow Aspirus to substitute its judgment for Lincoln's and terminate the employee, deeming her "disabled" without any information about her condition other than what she chose to share with her employer—despite the fact that Lincoln expressly decided that she was **not** disabled under the policy's "procedures for being determined disabled," with the benefit of the employee's full set of medical opinions and records, and with the benefit of Lincoln's extensive experience in evaluating applications for LTDI benefits. Such a result would be truly absurd. Aspirus's proposed interpretation of the disability provision—that it authorizes Aspirus to review whatever information it happens to have regarding an employee's condition, and then decide for itself whether the employee meets the policy's definition of "disabled"—is simply not a plausible reading of the provision's plain language.

Aspirus may well not have expected the result demanded by the plain language of the disability provision in Leit's case. But an unexpected result is not absurd, and courts must hold parties to the results of the plain language of their contractual promises, even if those results are unexpected. As this Court has explained:

> [I]t takes more than an economic puzzle to justify giving an unusual spin to contractual language. Contracts allocate risks, and judicial decisions changing those allocations after the fact not only lead to expensive litigation (as each side invests in the pursuit of advantage) but also make the institution of contract less useful ex ante. Parties to

contracts may prefer simple-minded textualism to costly disputes later on, even knowing that a plain-language reading sometimes goes wrong, and they may make adjustments—in other parts of the contract, or in the royalty rate—to compensate for this possibility. Or perhaps they just made a mistake and now rue the choice. Learned Hand remarked that "in commercial transactions it does not in the end promote justice to seek strained interpretations in aid of those who do not protect themselves."

*Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 258 (7th Cir. 1998).

### B.    Aspirus's newly proffered meaning of "the procedures for being determined disabled" is implausible

In Aspirus's three briefs submitted on the parties' cross-motions for summary judgment in the district court, Aspirus offered no alternative explanation whatsoever for what the phrase "the procedures for being determined disabled" might refer to, if not the common-sense meaning proposed by Leit. *See* ECF Nos. 28, 34, 37. Nor did the district court attempt to explain what this phrase might mean. The failure is understandable, as it is difficult to conceive how any LTDI policy's "procedures for being determined disabled" would allow anyone other than the insurer itself to determine whether the applicant meets the policy's definition of disability. But in its response brief before this Court, Aspirus attempts for the first time to give an alternate referent for this key phrase, contending that the Lincoln LTDI policy's "**procedures** for being determined disabled" are nothing more than applying the policy's definition of "disabled" to the employee in question.

The very fact that Aspirus did not advance this proposed explanation for "the procedures for being determined disabled" strongly suggests that the explanation was developed for appeal, not at the time that Aspirus drafted the phrase. If the phrase really meant what Aspirus says it means, why did Aspirus not raise the point in any of its three summary-judgment briefs submitted in the district court?

In any event, Aspirus's proposed meaning is implausible for two further reasons. First, as noted above, nothing in the employment contract required the employee to provide proof of disability to Aspirus. It is thus implausible to conclude that the disability's provision's reference to "the procedures for being determined disabled" defined in the Lincoln LTDI policy would mean only that Aspirus would evaluate whatever evidence it happened to have on hand to determine whether an employee is "disabled."

Second, Aspirus's new position would not save the phrase "the procedures for being determined disabled" from being rendered mere surplusage. In effect, Aspirus's position is that these "procedures" consist of nothing more than applying the policy's definition of "disabled." But if the phrase meant nothing more than this, the disability provision would simply have read, "'Disabled' shall be defined in the disability insurance policy provided by Aspirus hereunder," without any reference to "procedures for being determined disabled," as those "procedures" would be inherent in the definition of "disabled" itself.

### C. Aspirus improperly invites the Court to consider extrinsic evidence regarding the meaning of the disability provision

Aspirus contends that if the Court concludes that the disability provision is ambiguous, the Court should review extrinsic evidence and uphold the district court's grant of summary judgment on that basis. But Aspirus's position fails on two basic legal grounds. First, Aspirus failed to argue in the district court that the extrinsic evidence supports summary judgment, *see* ECF Nos. 28, 34, 37, and has therefore waived that argument. *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 943 (7th Cir. 2010).

Second, under Wisconsin law, consideration of extrinsic evidence to interpret an ambiguous contract provision presents a question of fact for the jury, not a question of law for the court. *Town Bank*, 793 N.W.2d at 483. Aspirus has not shown that the extrinsic evidence supports its position at all, much less that the extrinsic evidence is so one-sided as to preclude a jury finding that it supports Leit's position. Aspirus argues that because the employment contract addressed the possibility of Leit becoming disabled, and because Aspirus granted him leave (most of which it was either contractually or legally obligated to grant him), that evidence supports the conclusion that Aspirus was entitled to unilaterally determine whether Leit was "disabled" by applying the Lincoln LTDI policy's "procedures for being determined disabled." It is unclear why Aspirus believes that these facts lead to this result at all, as Aspirus fails to explain the reasoning that would lead to such a conclusion, much less why Aspirus believes that these facts would require a jury verdict in its favor.

### D.   Aspirus waived its argument regarding Leit's damages by failing to raise it in the district court

Aspirus raises another argument for the first time on appeal, contending that summary judgment in its favor was compelled because Leit failed to show evidence of damages. Again, Aspirus has waived the argument by failing to raise it in the district court. *See* ECF Nos. 28, 34, 37; *LaBella Winnetka*, 628 F.3d at 943. Leit did not present evidence of his damages because Aspirus did not challenge that element of his claim in its summary-judgment briefing, and Aspirus may raise the challenge on appeal after failing to do so in the district court.

Aspirus's argument fails on its merits, as well. Even if Leit were to concede that he was not owed his salary—which he emphatically does not—Aspirus does not explain why Leit's remedies for breach of contract would not include other employment benefits to which he would have been entitled, such as health insurance, matching retirement contributions, and the like. Even without Leit's lost salary, Aspirus would still have owed him other tangible benefits of employment, which would provide more than adequate proof of damages.

### E.   Leit did not waive his right to appeal the district court's grant of summary judgment on his claim for breach of the implied covenant of good faith and fair dealing

Aspirus argues that Leit has waived appeal of the district court's grant of summary judgment on his claim for breach of the implied covenant of good faith and fair dealing by failing to raise the issue in his initial brief. Not so. As explained in Leit's initial brief, the district court granted summary judgment to Aspirus on this claim because the result was dictated by the district court's decision on Leit's claim

for breach of contract. *See* Dkt. 7, at 13; *see also* A013–014. Leit properly raised the issue on appeal and did not waive it.

## II.     The district court violated Seventh Circuit rules by failing to adequately consider Leit's arguments and by failing to provide adequate reasons for its judgment

When resolving any claim on the merits, Seventh Circuit rules require a district court judge to "give his or her reasons" for doing so. A judge's failure to provide adequate explanation justifies vacatur and remand. *See Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 760 (7th Cir. 2022). Contrary to Aspirus's assertion that "the district court carefully explained it[s] analysis and ultimately provided multiple reasons" for its judgment, the district court disregarded Leit's arguments without explaining its disagreements with them.[1] The district court did **not** explain why Leit's interpretation of the disability provision was incorrect, but instead merely stated, without analysis, that Leit's position "borders on the absurd." A013. Nor did the district court offer any alternative meaning for the phrase "the procedures for being determined disabled" if not the process by which an applicant submits medical proof of claim for evaluation by Lincoln.

Likewise, the district court violated Circuit Rule 50 by failing to explain why Aspirus was entitled to summary judgment. Even if Leit were not entitled to summary judgment, it would not automatically follow that Aspirus was *ipso facto* entitled to summary judgment. The district court failed to explain why the disability

---

[1] Notably, the four pages that Aspirus devotes to explaining why the district court's opinion satisfied Circuit Rule 50 is the same length as the entirety of the district court's scant four pages devoted to analyzing the parties' cross-motions for summary judgment. *See* A009–013.

provision authorized Aspirus to usurp Lincoln's authority and evaluate for itself whether Leit was disabled and terminate him on the basis of that evaluation. The district court's failure in this regard also requires vacatur and remand.

Next, Aspirus contends that even if this Court concludes that the district court's opinion violated Circuit Rule 50, remand is unnecessary because this Court can independently conclude from the record that summary judgment was warranted for Aspirus on Leit's claims for breach of contract and his good-faith claim. Aspirus's arguments on Leit's breach claim track its arguments on the merits of this appeal, so Leit will not respond to them further here. As for Leit's good-faith claim, Aspirus's argument on this point beg the question by assuming that the spirit of the agreement would not require Aspirus to take care of a key employee who had left a lucrative practice in New York, disclosed his serious medical condition in pre-employment communications with Aspirus, and agreed to be bound to a three-year contract in Wisconsin, even though he was ineligible for LTDI benefits because of a procedural requirement. As argued above, the spirit of the agreement was that Leit would receive compensation in either the form of his salary from Aspirus or the form of LTDI benefits from the Lincoln policy. A jury could fairly and reasonably conclude that Aspirus violated the spirit of the employment agreement and its duty of good faith and fair dealing when it terminated Leit under the agreement's disability clause, while at the same time leaving him without any recourse to LTDI income.

## CONCLUSION

For the reasons given in Leit's initial brief and this reply brief, the Court should vacate the district court's order and judgment awarding summary judgment to Aspirus and remand this case to the district court with instructions to award partial summary judgment to Leit on Aspirus's liability under his claim that Aspirus breached his employment contract by terminating him.

Respectfully submitted this 31st day of July, 2023.

HAWKS QUINDEL, S.C.
*Attorneys for Plaintiff-Appellant,*
*Michael Leit*


By: _electronically signed by Aaron N. Halstead_
Aaron N. Halstead, WI SBN 1001507
Email: ahalstead@hq-law.com
Aaron J. Bibb, WI SBN 1104662
Email: abibb@hq-law.com
409 E. Main Street
Madison, WI 53703
Telephone: 608/257-0040
Facsimile: 608/256-0236

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. (32)(A)(7) and CIRCUIT RULE 32(c)**

The undersigned, counsel of record for the Plaintiff-Appellant, furnishes the following in compliance with Fed. R. App. P. Rule 32(a)(7) and Circuit Rule 32(c).

I hereby certify that this Brief conforms to the rules contained in F.R.A.P. 32(a)(7) and Circuit Rule 32(cs) for a brief produced with a proportionally spaced serif font.  The length of the brief is 3,546 words.

Dated this 31st day of July, 2023.

HAWKS QUINDEL, S.C.
*Attorneys for Plaintiff-Appellant,*
*Michael Leit*

By: <u>*electronically signed by  Aaron N. Halstead*</u>
Aaron N. Halstead, WI SBN 1001507
Email: ahalstead@hq-law.com
Aaron J. Bibb, WI SBN 1104662
Email: abibb@hq-law.com
409 E. Main Street
Madison, WI 53703
Telephone: 608/257-0040
Facsimile: 608/256-0236

15

## CERTIFICATE OF SERVICE

The undersigned, counsel of record for Plaintiff-Appellant, hereby certifies that on July 31, 2023, an electronic copy of the Reply Brief of Plaintiff-Appellant, Michael Leit was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Counsel for Defendant-Appellee, Chad R. Levanetz and Nicole Stangl who are registered MS/ECF users, will be served by the CM/ECF system.

Dated this 31st day of July, 2023.

HAWKS QUINDEL, S.C.
*Attorneys for Plaintiff-Appellant,*
*Michael Leit*

By: *electronically signed by  Aaron N. Halstead*
Aaron N. Halstead, WI SBN 1001507
Email: ahalstead@hq-law.com
Aaron J. Bibb, WI SBN 1104662
Email: abibb@hq-law.com
409 E. Main Street
Madison, WI 53703
Telephone: 608/257-0040
Facsimile: 608/256-0236

16

**CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 25(a)**

The undersigned, counsel of record for Plaintiff-Appellant, hereby certifies that the Reply Brief of Plaintiff-Appellant, Michael Leit was electronically filed pursuant to Circuit Rule 25(a).

Dated this 31st day of July, 2023.

HAWKS QUINDEL, S.C.
*Attorneys for Plaintiff-Appellant,*
*Michael Leit*


By: *electronically signed by  Aaron N. Halstead*
Aaron N. Halstead, WI SBN 1001507
Email: ahalstead@hq-law.com
Aaron J. Bibb, WI SBN 1104662
Email: abibb@hq-law.com
409 E. Main Street
Madison, WI 53703
Telephone: 608/257-0040
Facsimile: 608/256-0236